**Rafael MERINO VINAS, et al., Plaintiffs,**

**v.**

**Alfonso BOTO, et al., Defendants.**

**Ferreteria Merino, Inc., Nominal Defendant.**

**Civ. No. 90–1970 HL.**

United States District Court, D. Puerto Rico.

July 2, 1993.

Patrick D. O'Neill–Cheyney, Ruben Nazario–Velasco, Patrick D. O'Neill–Cheyney, Martinez, Odell & Calabria, Hato Rey, PR, for plaintiffs.

Roberto Corretjer–Piquer, Hato Rey, PR, Guillermo J. Bobonis, Condado, PR, for defendants.

## OPINION AND ORDER

LAFFITTE, District Judge.

■ Before the Court are cross-motions for summary judgment in this derivative action for declaratory and injunctive relief brought under section 10(b)[1] of the Securities Exchange Act of 1934 and Rule 10b–5.[2] Plaintiffs[3] are shareholders of nominal defendant Ferreteria Merino, Inc., a close corporation[4] organized under the laws of Puerto Rico, with its principal place of business in San Juan. Defendants are also shareholders in Ferreteria Merino. At the time that this lawsuit was originally brought, the Defendants and Plaintiff Victor Merino Calenti sat on Ferreteria Merino's board of directors.

Section Five of Ferreteria Merino's Articles of Incorporation establishes a capital structure consisting of two classes of stock: common and preferred.[5] Both types of shares have a par value of $100. The corporation has issued 6,000 shares of common stock and 4,000 shares of preferred stock. All but one of the Plaintiffs and all Defendants in this action own, in varying ratios, both common and preferred stock.[6] Preferred stock does not include a right to vote or to be called for shareholder meetings. It does, however, have a right to receive full dividends before common stock receives any dividend payments. Preferred stock also has the right, in the event of a liquidation, to receive its par value plus any due dividends before any payment is made to the common stock. Section Five of the Articles of Incorporation also provides that Ferreteria Merino has the right to redeem the preferred stock at its par value plus accumulated dividends, if the board of directors votes to do so any time after three years from the date of

1. Section 10(b) reads as follows:
   **Manipulative and deceptive devices**
   It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
   \* \* \* \* \* \*
   (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. 15 U.S.C. § 78j(b).

2. Rule 10b–5 reads as follows:
   **Employment of manipulative and deceptive devices**
   It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
   (a) To employ any device, scheme, or artifice to defraud,
   (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
   (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
   in connection with the purchase or sale of any security. Commodity and Security Exchanges, 17 C.F.R. § 240.10b–5 (1992).

3. This action was originally brought by Victor Merino Calenti, Rosita Merino Alfonso de Haeussler, José Merino Viñas, and Carlos Merino Menéndez. Victor Merino Calenti died in September 1991. The following members of his estate assumed his interest in this action: Rafael Merino Viñas, Providencia Merino Viñas, Lissette Merino Viñas, María Victoria Merino Viñas, María del Carmen Merino Viñas, José Merino Viñas, and Ada Viñas Marchany.

4. The Securities Exchange Act of 1934 applies to close corporations. *Ruefenacht v. O'Halloran*, 737 F.2d 320, 336 (3rd Cir.1984).

5. Docket no. 54, exhibit III.

6. Docket no. 54, Statement of undisputed material facts, exhibit D.

the preferred stock's issuance.[7]

In 1988 the board of directors began to consider selling Ferretería Merino. At a board meeting Victor Merino Calenti asserted that before the corporation could be sold, it would have to redeem out its preferred shares at $100 per share. Defendants opposed this proposal on the grounds that preferred stock had always been traded at the same price as common stock, that this price was over $100, and that it would therefore be unfair to pay the holders of preferred stock only $100 per share. In order to prevent this redemption from taking place, Defendants sought to amend Section Five of the Articles of Incorporation and eliminate the corporation's right to redeem the preferred stock at $100 per share. At a meeting on June 12, 1990, Defendants proposed an amendment to Section Five of the Articles of Incorporation that read in part:

> Preferred shares will not be redeemable by the corporation and will be quoted at and will participate in the value and increment of the same under the same conditions as common shares, including in the case of dissolution and liquidation of the corporation, be it voluntarily or not; except that they shall have the right to receive full payment on all due and unsatisfied dividends before any of the common stockholders are paid any amount.[8]

Under this proposed amendment, preferred stock would continue to receive priority with regard to receiving dividend payments. Preferred stock would not have the right to vote, except when a shareholders meeting would consider a proposed amendment to the Articles of Incorporation that would alter the preferences, rights, numbers, or par values of any class of stock.[9] The board voted on the proposed amendment at the June 12 meeting. Defendants, who constitute a majority of the board of directors, approved it.

Victor Merino Calenti opposed it. On the following day, the secretary of the corporation sent a notice to all shareholders that a shareholders meeting would be held on July 28, 1990 to vote on the proposed amendment. The notice also stated that a majority of the board approved the proposal based on the beliefs that it would be in the corporation's best interest and that it would prevent one class of stock from unfairly displacing any other class.[10]

Before the shareholders' meeting could be held, Plaintiffs brought this action, alleging a violation of section 10(b) and Rule 10b–5. Plaintiffs claimed that the proposal would, in effect, amount to the issuance of a new class of stock. According to Plaintiffs, Defendants were using their controlling interest on the board of directors to have this new class of stock issued to them for inadequate consideration, in violation of Rule 10b–5. Plaintiffs further alleged that the information included in the notice to the shareholders contained material misrepresentations and omissions of material facts, thereby preventing the shareholders from making an informed decision on the proposed amendment. Plaintiffs also claimed that the proposed amendment violated Puerto Rico corporations law and the terms of Ferreteria Merino's Articles of Incorporation. Plaintiffs sought a declaratory judgment that the proposed amendment was illegal. They also sought preliminary and permanent injunctive relief to prevent Defendants from proceeding with their plan.

The Court scheduled a hearing to show cause as to why Plaintiffs should not be granted preliminary injunctive relief. At the hearing, the parties reached a temporary agreement. Plaintiffs agreed to withdraw their petition for injunctive relief without prejudice, and Defendants agreed not to hold a shareholders' meeting to vote on the proposed amendment. The parties also agreed

---

7. The last paragraph of Section Five reads as follows:

The Preferred Stock remains subject to redemption by the corporation at the rate of one hundred dollars ($100.00) per share, plus accumulated and earned dividends, that have not been paid, at any time after three years from the date of issuance, in the form and manner agreed upon and determined by the Board of Directors.

8. Docket no. 54, Statement of undisputed material facts, exhibit E.

9. *Id.*

10. Docket no. 54, Statement of undisputed material facts, exhibits E, F.

that the corporation would not redeem any stock.[11] It appeared that the parties might settle their dispute, but no settlement was ever reached, despite extensive negotiations.[12] Subsequently, Plaintiffs' filed a motion for summary judgment requesting both a declaration that the proposed amendment violates section 10(b) and an injunction preventing Defendants from holding a shareholders' meeting to consider the amendment. Defendants have opposed the motion and have moved for summary judgment, arguing that the proposed amendment is not illegal and that the shareholders should be allowed to consider it. For the reasons set forth below, the Court grants Defendants' motion for summary judgment.

## DISCUSSION

At the outset, the Court notes that summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The opposing party must then designate specific facts that show that there is a genuine triable issue. *Id.* at 324, 106 S.Ct. at 2553; Fed.R.Civ.P. 56(e).

■ The federal securities laws that Plaintiffs invoke emerged in response to the stock market crash in 1929. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194–95, 96 S.Ct. 1375, 1381–82, 47 L.Ed.2d 668 (1976). The fundamental purpose of the Securities Exchange Act of 1934 is to ensure that there be honest publicity and full disclosure in securities transactions. *Basic Inc. v. Levinson,* 485 U.S. 224, 230, 108 S.Ct. 978, 982–83, 99 L.Ed.2d 194 (1988); *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 476–77, 97 S.Ct. 1292, 1302–03, 51 L.Ed.2d 480 (1977). Accordingly, section 10(b) of the 1934 Act and Rule 10b–5 prohibit the use of manipulative or deceptive devices in sales of securities. *Holmes v. Bateson,* 583 F.2d 542, 551 (1st

Cir.1978). To establish a claim under section 10(b) and Rule 10b–5, the plaintiff must show that a defendant, with scienter and in connection with the sale of a security, "falsely represented or omitted to disclose a material fact upon which the plaintiff justifiably relied." *Kennedy v. Josephthal & Co.,* 814 F.2d 798, 804 (1st Cir.1987); *see also Holmes,* 583 F.2d at 551; *Pike v. Edgar,* 801 F.Supp. 907, 912 n. 15 (D.N.H.1992). A plaintiff in a Rule 10b–5 claim must first prove that the defendant has made a misrepresentation or material omission. *Lefkowitz v. Smith Barney, Harris Upham & Co.,* 804 F.2d 154, 155 (1st Cir.1986) (per curiam). The materiality of any undisclosed information is an essential element to a plaintiff's case. *Milton v. Van Dorn Co.,* 961 F.2d 965, 969 (1st Cir.1992). Omitted information is material only if there is a substantial likelihood that a reasonable shareholder would consider the information important and would view its nondisclosure as significantly altering the "total mix" of information available to him. *Levinson,* 485 U.S. at 232–33, 108 S.Ct. at 983; *Milton,* 961 F.2d at 969.

■ Plaintiffs argue that Defendants' violated section 10(b) and Rule 10b–5 by failing to disclose that (1) the proposed amendment would be a conversion of preferred stock into common stock, and would be tantamount to issuing additional shares of common stock for inadequate consideration; (2) the amendment would thus dilute the value of the common stock; (3) the amendment would also cause the corporation to relinquish a valuable asset—the right to redeem preferred stock at $100 per share; (4) the holders of common stock would have nothing to gain by this amendment; and (5) the Defendants would receive pecuniary benefits if the amendment were approved. The Court disagrees with Plaintiffs' characterization of the proposed amendment as a conversion of preferred stock into common stock or as an issuance of additional common stock. Under the proposed amendment to Section Five, preferred and common stock will continue to be different classes of stock. Preferred stock will not

---

**11.** *See* Docket no. 9.

**12.** *See* Docket no. 19.

have the right to vote unless an amendment has been proposed to alter its characteristics. Preferred will continue to have preferential treatment with regard to receiving dividend payments. The primary change under the proposed amendment is that the corporation will no longer have a right to redeem the preferred stock at par value. The Court finds that this proposed amendment would not constitute converting the preferred stock into common stock. This amendment would not deprive any shareholders of their interests in Ferreteria Merino. They would continue to hold the same percentages of common and preferred stock that they do now.

■ Plaintiffs also argue that Defendants' failure to notify the shareholders that the amendment would dilute the market value of common stock constitutes a material omission. Defendants disagree, arguing that the shares of both common and preferred stock have always been valued at the same price, that the amendment would not affect these prices, and that there would therefore be no dilution in value. Defendants have submitted evidence of previous transactions of Ferreteria Merino stock where the two classes of stock were valued equally.[13] Plaintiffs do not controvert this allegation, nor submit evidence of transactions where there was a difference between the prices paid for common and preferred stock. They argue only that these previous transactions are not relevant to the comparative value of common and preferred stock because these transactions took place between family members and because there has been a change in both the relationship between the shareholders and in the "corporate climate." The Court is not persuaded by this argument. Absent any evidence to the contrary, it finds that the preferred and common stock have the same market value.

The underlying dispute in this case is really about how the value of the corporation should be distributed among the shareholders. In order to illustrate the two means by which Ferreteria Merino's value can be distributed, the Court uses a hypothetical offer of $10 million to buy Ferreteria Merino. The corporation has 10,000 shares of stock outstanding: 6,000 common and 4,000 preferred. If all shares are valued equally, a sale of Ferreteria Merino for $10 million would give holders of both common and preferred stock $1,000 per share. If however, the corporation redeemed the preferred shares prior to the sale, as Victor Merino Calenti claimed that it must, a different result would be reached. The corporation would spend $400,000 in redeeming the 4,000 shares of preferred stock at $100 per share. Presumably, this expenditure of $400,000 would cause the prospective buyer to reduce the offer to $9.6 million. The sale of Ferreteria Merino for $9.6 million would then give the holders of the 6,000 shares of common stock $1,600 per share, while the holders of preferred stock would only have received $100 per share as a result of the redemption.

Thus, a shareholder who has a higher percentage of common than preferred stock would benefit from a redemption of the preferred stock prior to the sale of the corporation. A person with a higher percentage of preferred stock, by contrast, would not. Most of the Ferreteria Merino shareholders hold both common and preferred stock. However, they do so in different ratios.[14] Of the Plaintiffs, all but José Merino Viñas own more common than preferred stock.[15] Of the Defendants, Pedro Piquer and Alfonso Boto also own more common than preferred stock; the rest of Defendants own more preferred than common. Plaintiffs argue that Defendants failed to disclose that they would realize a pecuniary benefit if the proposed amendment were approved. Assuming that the amendment would indeed benefit those persons holding more preferred than common stock, the Court notes that this allegation is only partly true. Pedro Piquer and Alfonso Boto, both of whom own more common than preferred stock, could suffer a pecuniary loss from the approval of the amendment. Moreover, because information on the numbers of shares held by each share-

---

13. Docket no. 60, exhibit 1 at 3–6, exhibit 3 at 2.

14. *See* Docket no. 54, Statement of undisputed material facts, exhibit D.

15. *See id.*

holder is readily available, there could be no omission of material facts regarding who would realize a pecuniary benefit from the approval of the amendment.

As mentioned above, the fundamental purpose of the Securities Exchange Act of 1934 is to ensure honest publicity and full disclosure in securities transactions. *See Levinson*, 485 U.S. at 230, 108 S.Ct. at 982–83. The 1934 Act does not apply where a proper disclosure has been made. In the case before the Court, Defendants provided the shareholders with the complete language of the proposed amendment and the reason why the board of directors had approved it. The issue of whether to amend Section Five of the Articles of Incorporation is one of how to organize the value of the corporation. It may be true, as Plaintiffs allege, that the proposed amendment would cause the corporation to relinquish a valuable asset—the right to redeem preferred stock at $100 per share. It may also be true that the holders of common stock would have nothing to gain by the amendment. However, these allegations are not facts that have been hidden from the shareholders. From a simple reading of the proposed amendment, a shareholder can readily discern that the corporation will no longer be able to redeem shares of preferred stock at $100 per share.

As discussed in the Court's description of a hypothetical purchase for $10 million of Ferreteria Merino, holders of common stock could benefit from the redemption of all the preferred stock prior to the sale of the corporation. If this amendment would indeed harm the interests of holders of common stock, these shareholders are free to reject the proposed amendment. At a shareholders' meeting they will have an opportunity to consider the merits of the amendment and hear objections, including Plaintiffs' objections, to the plan. Plaintiffs have not shown that Defendants have omitted material facts whose disclosure would be substantially likely to be considered important by a reasonable shareholder. Rather, Plaintiffs have only shown that Defendants have failed to disclose what Plaintiffs characterize as the defects of the proposed amendment. The Court, as discussed above, does not agree with Plaintiff's characterizations of the amendment. More importantly, these alleged defects have not been hidden from shareholders. Some of them are self-evident from a reading of the proposed amendment. All of them may be discussed and considered at the shareholders' meeting held on this issue. Because there has been no misrepresentation or omission of material facts, the Court grants Defendants' motion for summary judgment and dismisses Plaintiffs' claims under section 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934.

## LOCAL LAW CLAIMS

Plaintiffs have also brought claims against Defendants for alleged violations of Puerto Rico corporations law and of the terms of Ferreteria Merino's Articles of Incorporation. Because the Court has dismissed Plaintiffs' claims under the Securities exchange Act of 1934, there remains no independent basis of jurisdiction over the local law claims. A federal court's exercise of pendent or supplemental jurisdiction [16] is discretionary. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); 13B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3567.1, at 121–32 (2d ed. 1984). After a federal court has dismissed a plaintiff's federal claims, it may retain jurisdiction over any state law claims that have been brought under the court's supplemental jurisdiction. *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988); *Rodriguez v. Comas*, 888 F.2d 899, 904 n. 20 (1st Cir.1989); *Jones v. Village of Villa Park*, 784 F.Supp. 533, 535 n. 1 (N.D.Ill.1992).

In determining whether to exercise jurisdiction over state law claims, a federal court should consider judicial economy, convenience, and fairness to the litigants. *Cohill*, 484 U.S. at 350 n. 7, 108 S.Ct. at 619 n. 7; *Chesley v. Union Carbide Corp.*, 927 F.2d

---

**16.** In 1990 the doctrine of pendent jurisdiction was codified, together with the doctrine of ancillary jurisdiction, as "supplemental jurisdiction" in 28 U.S.C. § 1367. *See* 13B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3567, at 22 (2d ed. Supp.1993).

60, 64 (2nd Cir.1991). The case before the Court was originally brought in July 1990, almost three years ago. The evidence submitted in support of the motions for summary judgment indicates that the parties have already conducted substantial amounts of discovery for this case. For the Court to dismiss the local law claims at this late stage of the proceedings would unfairly force the parties to state court, where it is conceivable that they would have to wait three more years before their claims could be resolved. Moreover, this Court is already conversant with the facts of this case, and the local law claims do not raise novel or complex issues that would require deference to Puerto Rico courts. The more economic use of judicial resources would be for this Court to continue to exercise jurisdiction over Plaintiffs' local law claims. Accordingly, the Court now proceeds to a determination of these claims. *See* 28 U.S.C.A. § 1367 Practice Commentary (West Supp.1993), at 245 ("[I]f the dismissal of the main claim occurs late in the action, after there has indeed been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair.").

Plaintiffs claim that the proposed amendment violates section 803 of the Puerto Rico General Corporations Law, which reads in pertinent part:

**Redemption, purchase or retirement of preferred or special stock**

(a) Whenever any corporation organized under this subtitle has issued any preferred or special shares it may, subject to the provisions of its certificate of incorporation—

\* \* \* \* \* \*

(2) at any time or from time to time purchase all or any part of such shares, but in the case of shares subject to redemption, at not exceeding the price or prices at which the same may be redeemed. . . .

P.R.Laws Ann. tit. 14, § 1803 (1989). Plaintiffs claim that the proposed amendment would redeem the preferred stock in exchange for new shares of common stock.

Plaintiffs argue that because Ferreteria Merino's common stock is worth more than the $100 redemption price of preferred stock, the preferred stock is being redeemed at a price in excess of its permissible redemption price, in violation of section 803. The Court disagrees. As discussed above, the amendment would not be a conversion of preferred stock into common stock. Nor would it be a redemption of preferred stock. The amendment merely changes the characteristics of preferred stock. Such a change is permitted under section 802 of Puerto Rico corporations law, which reads in pertinent part:

**Amendment of certificate of incorporation—After payment of capital or where corporation has no capital stock**

(a) Any corporation of this Commonwealth, whether created by special act or general law, or any corporation created under the provisions of this subtitle, may, from time to time, when and as desired, *amend its certificate of incorporation by—*

\* \* \* \* \* \*

(3) increasing or decreasing its authorized capital stock or reclassifying the same, by changing the number, par value, designations, preferences or relative, participating, optional or other special rights of the shares, or *the qualifications, limitations or restrictions* of such rights, or by changing shares with par value into shares without par value, or shares without par value into shares with par value either with or without increasing or decreasing the number of shares. . . .

*Id.* § 1802 (Emphasis added). The proposed amendment would change the qualifications and limitations of the shares of preferred stock. This is permissible under section 802. Accordingly, the Court grants Defendants' motion to dismiss Plaintiffs' claim that the proposed amendment would violate Puerto Rico's General Corporation Law.

Plaintiffs also claim that the proposed amendment would violate their pre-emptive right allowed under section 9 of the Articles of Incorporation. That section states, "The stockholders on equal conditions, shall always have preference to acquire the stock and

bonds of the Corporation." Plaintiffs argue that the amendment would in effect offer a new class of stock exclusively to the current holders of preferred stock, to the detriment of the holders of common stock. The Court disagrees with this argument for two reasons. One, as discussed above repeatedly, the amendment would not create a new class of stock; rather, it would only alter the characteristics of the currently existing preferred stock. Section 16 of the Articles of Incorporation provides, "The Corporation reserves the right to partially amend or alter these Articles of Incorporation pursuant to current laws." This amendment would be done pursuant to and in compliance with section 802(a)(2) of Puerto Rico's General Corporation Law.

Second, even if the Court were to assume that this amendment did create a new class of stock, the amendment could not unfairly benefit preferred stockholders over common stockholders. This is true for a simple reason: most of Ferreteria Merino's common stockholders are preferred stockholders. Of the 41 shareholders who appear in the record, only nine do not own both common and preferred stock.[17] All but one of the Plaintiffs own preferred stock. The Court is strained to see how this amendment would benefit preferred shareholders over common shareholders when these two classes are, for the most part, comprised of the same people.

Plaintiffs disagree with the amendment that Defendants have proposed. The fact that Plaintiffs disagree with it is not, by itself, sufficient to create a claim under the federal or local laws on corporate governance. Plaintiffs are unable to provide evidence of any fraud, misrepresentation, or bad faith on the part of Defendants. In such a situation, the proper judges of the merits of this amendment are Ferreteria Merino's shareholders. They should be given the opportunity to reach a determination on whether this amendment is in the best interests of their corporation. Therefore, the Court **grants** Defendants' motion for summary judgment and **denies** Plaintiffs' motion for

summary judgment. A judgment shall issue dismissing all of Plaintiffs' claims.

**IT IS SO ORDERED.**

17. *See* Docket no. 54, Statement of undisputed material facts, exhibit D.