USCA1 Opinion

 

 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 93-1759 VICTOR MERINO CALENTI, Plaintiff, Appellee, v. ALFONSO BOTO, ET AL., Defendants, Appellees, ____________________ RAFAEL MERINO VINAS, ET AL., Plaintiffs, Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Hector M. Laffitte, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Patrick D. O'Neill with whom Anabelle Rodriguez and Martinez, ___________________ __________________ _________ Odell & Calabria were on brief for appellants. ________________ Guillermo J. Bobonis with whom Bobonis, Bobonis & Rodriguez ______________________ _______________________________ Poventud and Roberto Corretjer Piquer were on brief for appellees. ________ ________________________ ____________________ May 23, 1994 ____________________ STAHL, Circuit Judge. Plaintiffs-appellants, ______________ shareholders in a closely-held and largely family-dominated Puerto Rico corporation, brought this claim against certain directors of the corporation, challenging the legality of a proposed amendment to the corporation's articles of incorporation. The amendment abrogated the corporation's right to redeem preferred shares at par value, and plaintiffs argued that the amendment violated federal securities law and Puerto Rico corporations law. The district court, finding no violation of either federal or Puerto Rico law, granted summary judgment in favor of defendants. We remand the state law claims, with the admonition that the district court should consider dismissal without prejudice to plaintiffs' right to bring those claims in state court. As to all other issues, we affirm. I. I. __ FACTUAL BACKGROUND AND PRIOR PROCEEDINGS FACTUAL BACKGROUND AND PRIOR PROCEEDINGS ________________________________________ Ferreteria Merino, Inc. (hereinafter "FMI" or "the corporation") is a closely held Puerto Rico corporation which sells hardware and home improvement products in Puerto Rico. FMI's certificate and articles of incorporation (hereinafter "the articles") establish two types of stock: common and preferred. The articles provide, inter alia, that preferred _____ ____ shares shall have preference with respect to payment of -2- 2 dividends, but that such shares shall not be accompanied by a right to vote in, be notified of, or participate in the general meetings of the corporation. In addition, the articles, which were drafted in 1939, establish a par value of $100 per share for preferred shares. The articles go on to provide that preferred shares are subject to redemption by FMI upon payment of $100 per share. Common stock, on the other hand, receives dividend payment only after preferred stock dividends have been paid, and does carry a right to vote in and be notified of general meetings. While common stock was also assigned a par value of $100 per share, there is no right of redemption for the common stock. Historically, both common and preferred shares have been sold at equivalent values. The market for shares of common and preferred stock has always been largely, if not wholly, among existing shareholders. Recent estimates value both types of stock at between $800 and $1,200 per share. In 1988, there was talk of selling the corporation. Plaintiff Victor Merino Calenti (hereinafter "Merino"),1 who was both a board member and a common stockholder of FMI, suggested at a board of directors meeting that, prior to a sale of the corporation, FMI should exercise its right to ____________________ 1. Original plaintiffs consisted of a group including Victor Merino Calenti, now deceased, and several other individuals. For the sake of convenience, we refer to all plaintiffs- appellants as "Merino." -3- 3 redeem all outstanding preferred stock for $100 per share, as allowed in the articles. Merino's fellow directors did not favor redemption of the preferred shares. This difference of opinion between Merino and his fellow directors stemmed, as both parties agree, from simple mathematics. Both parties recognized that the $100 redemption price would allow the corporation to repurchase preferred shares at a price far below their apparent market value, and that, upon liquidation or sale, the value of FMI common shares would benefit greatly from such a purchase.2 Needless to say, Merino owned more shares of common stock than preferred, and stood to benefit from the purchase of preferred shares at a price that the others considered to be artificially low, while the directors ____________________ 2. Roughly speaking, the parties agree that the corporation would be obtaining shares apparently worth $800 each for only $100 each. A subsequent sale of the entire corporation at full market value would reflect the $800 value, and holders of common stock could pocket the $700 per share difference. Nonetheless, many holders of common stock are also ____ holders of preferred stock. Shareholders so situated would lose money in the initial buy-back of preferred shares, only to regain it upon sale of the entire corporation. Thus, only shareholders who own a preponderance of common stock would truly benefit from the buy-back of preferred shares at $100 per share. Moreover, we note sua sponte that stock prices ___ ______ fluctuate; that the current value of the corporate shares is _______ not definitively known; that no sale of the corporation is imminent; and that, depending on a wide range of variables, redemption of preferred shares at $100 per share might not, in the future, prove to be the bargain that the parties seem to think it is. -4- 4 who opposed Merino's suggestion owned more preferred stock than common.3 In response to Merino's proposal, the board first sought the advice of a lawyer, one Matos, on the possibility of converting all preferred shares to common shares. Matos counseled against such a conversion. Instead of converting the preferred shares to common shares, the board considered and approved a resolution to amend the articles so that the corporation no longer had a right to redeem preferred shares.4 Nonetheless, in keeping with the articles, such an amendment still had to be approved by a shareholder vote. On June 13, 1990, notice was sent to all shareholders that there would be a shareholders' meeting on July 28, 1990, to vote on the resolution which the board had approved. Before the meeting could be held, Merino filed this action against his fellow board members, alleging, inter _____ alia, that the proposal amounted to the issuance of a new ____ class of stock, and that the board's actions violated section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. 78j(b), (hereinafter "section 10(b)"), 17 C.F.R. 240.10b-5 (hereinafter "Rule 10b-5"), and Puerto Rico corporations law. ____________________ 3. Initially, all shareholders held common and preferred shares in equal proportions. It was only over time that Merino came to hold a preponderance of common shares. 4. The articles expressly state, "The Corporation reserves the right to partially amend or alter these articles of incorporation in accordance with the current laws." -5- 5 Merino sought injunctive relief as well as a declaratory judgment that the proposed amendment was illegal. After settlement negotiations failed, defendants moved for summary judgment. The district court reasoned that there was no sale of stock for purposes of section 10(b), and that no violation of Puerto Rico law had occurred. It granted summary judgment in favor of defendants, and this appeal followed. II. II. ___ DISCUSSION DISCUSSION __________ A. Standard of Review ______________________ A district court's grant of summary judgment is subject to plenary review. Alan Corp. v. International ___________ _____________ Surplus Lines Ins. Co., No. 93-1697, slip op. at 6 (1st Cir. ______________________ April 22, 1994). We read the record indulging all inferences in favor of the non-moving party. Id. Summary judgment is ___ appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Id. ___ B. Merino's Federal Securities Claims ______________________________________ The basis of Merino's claims under section 10(b) and Rule 10b-5 is that the notice of the meeting which was sent to shareholders failed to disclose material information, such as the existence of the Matos opinion and the directors' -6- 6 relative ownership of preferred and common shares.5 Merino argues that this inadequate notice amounted to a breach of fiduciary duty. We begin by noting that the Supreme Court has expressly declined to extend the reach of federal securities laws into the realm of substantive state corporations law. Rather, it has noted that "[c]orporations are creatures of state law, and investors commit their funds to corporate directors on the understanding that, except where federal law expressly requires certain responsibilities of directors with respect to stockholders, state law will govern the internal affairs of the corporation." Cort v. Ash, 422 U.S. 66, 84 ____ ___ (1975). More specifically, the Court has expressly refused to extend section 10(b) to causes of action based on breaches of state law corporate fiduciary duties. See Sante Fe ___ _________ Indus., Inc. v. Green, 430 U.S. 462, 477-80 (1977). See also ____________ _____ ___ ____ Biesenbach v. Guenther, 588 F.2d 400, 402 (3d Cir. 1978) __________ ________ (declining to apply section 10(b) to breach of fiduciary duty); Golub v. PPD Corp., 576 F.2d 759, 764 (8th Cir. 1978) _____ __________ (similar). ____________________ 5. Since commencement of this action, the proposed amendment has been approved at a shareholder meeting. Practically speaking, the record shows that most, if not all, shareholders were aware, or could easily have been made aware, of the ramifications of the proposed amendment. Merino continues to challenge the notice sent to shareholders with regard to the meeting. -7- 7 Because shareholder meetings in general are an issue governed by state law, see, e.g., Chapter 107, P.R. ___ ____ Laws Ann. tit. 14 1701-1717 (1989) (entitled "Meetings, Elections, Voting and Notice"), and because Congress has expressed no intent to extend federal securities laws into the realm of fiduciary duties with regard to such meetings or notices thereof, Merino presents no basis for a claim under section 10(b) and Rule 10b-5. Nonetheless, Merino has persisted in his argument that the proposal of the amendment raised federal securities issues. He has argued, both below and on appeal, that the corporation's elimination of its own $100 redemption option creates a new type of stock, and that notice of the July 28, 1990, meeting therefore constitutes notice of a "purchase or sale" for section 10(b) purposes. More specifically, Merino argues that prior to the proposal of the amendment, preferred stock did not share in the equity of the corporation, and that only subsequent to the amendment does the preferred __________ stock now "partake[] of the attributes of common stock." This line of argument is belied both by general principles of corporate law and by the record before us. Under general principles of corporate law, preferred stock, although it has privileges different from those of common stock, is nevertheless a part of the capital stock and has the characteristics of capital stock. In other words, preferred stock is generally understood to represent an equity interest in the -8- 8 issuing corporation. . . . Thus holders of preferred stock in a corporation generally occupy, beyond the provisions of their contract, a position no different from that of holders of the common shares, possessing all the rights and being subject to the general liabilities of ordinary stockholders. 18A Am. Jur. 2d Corporations 438 (1985) (footnotes ____________ omitted). Merino cites no authority from Puerto Rico or elsewhere which suggests that this general rule does not apply here. Nor does the record support any other characterization of FMI's preferred shares.6 We conclude by noting that no preferred shares changed ownership upon the enactment of the amendment, nor have any shares been substituted for existing shares.7 Moreover, the essential elements of the preferred shares in this case have at all times remained intact. The shares will ____________________ 6. It appears from Merino's briefs that he viewed the pre- amendment preferred shares as not sharing in the equity of the corporation precisely because they were subject to redemption at $100 per share. The foregoing authority convincingly demonstrates that redemption options, as a general matter, serve no such purpose. Moreover, Merino's argument overlooks the fact that the redemption option need never be exercised by the corporation. 7. Merino alludes in his brief to 17 C.F.R. 230.145, which provides, inter alia, that "reclassifications" involving the _____ ____ "substitution of one security for another security" constitute sales of securities. Merino does not argue, nor could he on the record, that "another security" is being substituted for preferred shares. Accordingly, this case presents no reclassification for purposes of 17 C.F.R. 230.145. -9- 9 continue to receive preferred dividends, and they gain no voting rights. In sum, the evil which Merino perceives, namely, the participation of preferred shares in the equity of the corporation, is not a by-product of the proposed amendment. As far as the record indicates, FMI's preferred shares have always shared, and will continue to share in FMI's equity. Merino cites no authority, nor any record evidence, which would allow us to conclude otherwise. Equally important is the fact that no "purchase or sale" has occurred for section 10(b) and Rule 10b-5 purposes, nor has FMI created a new class of stock by proposing to amend its articles to eliminate FMI's right to redeem preferred shares. Accordingly, the "nondisclosures" complained of failed to implicate duties under federal securities law, and thus, the district court did not err in dismissing Merino's federal claims. C. Merino's State Claims _________________________ Merino also raised several state claims below, arguing, inter alia, that the proposed amendment benefitted _____ ____ preferred shareholders at the expense of common shareholders, and that the directors' approval of the amendment amounted to a breach of fiduciary duty. The district court disposed of these claims by noting that common shareholders and preferred shareholders "are, for the most part, comprised of the same -10- 10 people." Thus, the court saw no way in which the amendment could be said to benefit one class of shareholders at the expense of the other. Unfortunately, this observation does not dispose of Merino's state law claims. We think it uncontroversial that a director's fiduciary duty is owed to all stockholders, including minority stockholders. Thus, the mere fact that most of Merino's fellow stockholders also own preferred shares does not mean that he is not owed a fiduciary duty. Needless to say, we make no ruling on whether such a duty under Puerto Rico law was breached. On the record before us, however, we can go no further. The record does not allow us to determine either the nature or the scope of a fiduciary duty under Puerto Rico law, or the manner in which such a duty would be applied to the facts before us. Rather, the record only permits the conclusion that summary judgment was improvidently granted on this issue. On remand, we strongly recommend that the district court reconsider its decision to exercise supplemental jurisdiction over this issue of Puerto Rico law. To the extent that the parties make other arguments, they do so in a perfunctory manner, without any attempt at developed argumentation. Such issues may be deemed waived. See Wilson v. United States, No. 93-2025, ___ ______ _____________ slip. op. at 13 (1st Cir. May 4, 1994). III. III. ____ -11- 11 CONCLUSION CONCLUSION __________ For the foregoing reasons, the order of the district court granting summary judgment in favor of defendants is Affirmed in part, reversed in part, and remanded ___________________________________________________ for further proceedings consistent with this opinion. One- _______________________________________________________ ____ half costs to appellees. ________________________ -12- 12