USCA1 Opinion

 

 [NOT FOR PUBLICATION] United States Court of Appeals For the First Circuit ____________________ No. 97-1221 CHANNING M. WELLS III, ROBERT R. JUENGST, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, Plaintiffs - Appellants, v. MONARCH CAPITAL CORPORATION, ET AL., Defendants - Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. A. David Mazzone, Senior U.S. District Judge] __________________________ ____________________ Before Selya, Circuit Judge, _____________ Hill,* Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ _____________________ Edward F. Haber, with whom Thomas G. Shapiro, Michelle H. ________________ __________________ ___________ Blauner, Shapiro Haber & Urmy LLP, Herbert E. Milstein, Lisa M. _______ _________________________ ____________________ _______ Mezzetti, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., and ________ ________________________________________________ Calhoun, Benzin, Kademenos & Heichel were on brief for __________________________________________ appellants. Thomas L. Riesenberg, with whom Ernst & Young LLP, Irvin B. ____________________ _________________ ________ Nathan, Andrew T. Karron, Arnold & Porter, Kathryn A. Oberly and ______ ________________ ________________ _________________ William P. Hammer were on brief for appellees. _________________ ____________________ OCTOBER 29, 1997 ____________________  ____________________ * Of the Eleventh Circuit, sitting by designation. Per Curiam. In this case the district court found that Per Curiam. __________ no reasonable trier of fact could conclude that Defendant- Appellee Ernst & Young LLP (E&Y) had engaged in securities fraud and granted its motion for summary judgment. For the following reasons, we affirm. I. PROCEDURAL BACKGROUND This appeal from summary judgment is all that remains from a shareholder class action filed in 1991 by Plaintiffs-Appellants Channing M. Wells, III et al. (the Class)1 under Section 10(b) of ______ the Securities Exchange Act of 1934, 15 U.S.C. 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. 240.10b-5, against Monarch Capital Corporation (Monarch Capital), its wholly owned and largest subsidiary, Monarch Life Insurance Co. (Monarch Life), and Monarch Life s wholly owned subsidiary, Springfield Life Insurance Co., Inc. (Springfield Life) (collectively, the Monarch Defendants), and E&Y. Fourteen months after filing the complaint, the Class settled with the Monarch Defendants for $4.7 million. Following the settlement, the only remaining defendant was E&Y. The gravamen of the Class complaint against E&Y alleged that E&Y violated federal securities laws and state law by making material misrepresentations in (and omissions from) the Monarch Defendants 1989 consolidated financial statements (and E&Y s  ____________________ 1 Wells represented a class of shareholders who purchased Monarch Capital stock between November 10, 1989, and November 14, 1990, at prices ranging from $16 1/8 to $4 3/8 per share. -2- accompanying 1990 audit opinion) with scienter. It did so, the Class alleged, by materially overstating the statutory surplus2 of Monarch Capital s subsidiaries, more particularly, the value of the Cash Management Account (CMA). See Part II.B. infra. The ___ _____ end result of these actions, the Class complained, was to mislead investors by artificially inflating the price of Monarch Capital s stock. After the 1992 settlement, the case remained stagnant for three years.3 Then, in March 1995, the district court sua sponte __________ scheduled a status conference. Three months later, E&Y filed a motion for summary judgment. In response, the Class filed its opposition to E&Y s motion and a motion for leave to file a Second Amended Class Action Complaint. In January 1996, the Class filed its own motion for partial summary judgment. Stating, in its forty-five page opinion, that Plaintiffs [the Class] virtually abandoned the case, the district court granted summary judgment for E&Y on the Class claims for primary liability under Section 10(b) and denied the Class motions.  ____________________ 2 An insurance company s statutory surplus is comprised of its admitted assets (or statutory assets minus statutory liabilities). 3 During this period of inactivity, the Supreme Court issued its decision in Central Bank of Denver, N.A. v. First Interstate Bank ___________________________ _____________________ of Denver, N.A., 511 U.S. 164 (1994), holding that a private ________________ plaintiff may not maintain an aiding and abetting suit under Section 10(b) as the text of the 1934 Act does not itself reach those who aid and abet a 10(b) violation. Id. at 177. The __ district court found, after Central Bank, that all pending _____________ secondary liability claims against E&Y were barred and granted summary judgment in favor of E&Y on all claims for aiding and abetting. -3- This appeal follows. II. FACTUAL BACKGROUND A. Monarch Capital - the Parent Holding Company ____________________________________________ Monarch Capital was a typical financial holding company of the 1970s and 1980s. Its operations included insurance and insurance services, corporate, real estate investment and venture capital, and investment management. For nearly two decades, Monarch Capital centered its focus on its real estate business. By 1989, it was clear that this focus was in error. Monarch Capital was in severe financial distress, with reported losses totaling millions of dollars. Even its president, in his 1989 annual report to shareholders, conceded that [o]ur financial results for the past two years have been very disappointing.  Monarch Capital announced plans to terminate its capital markets and real estate operations and concentrate on its profitable insurance sector. Despite vows to pull out of its downward spiral, Monarch Capital continued to deteriorate financially. The present action struck the death knell blow; parent Monarch Capital was forced into bankruptcy4 and subsidiary Monarch Life was placed in receivership by the Massachusetts insurance  ____________________ 4 The bankruptcy action stayed the Class claims against Monarch Capital. When the settlement agreement was finalized, the bankruptcy court approved Monarch Capital s reorganization plan, discharging and releasing the Class claims against it. -4- commissioner.5  ____________________ 5 Monarch Life was regulated by the Commissioner of Insurance for the Commonwealth of Massachusetts. As a state regulated insurance company, it was required to file annual statements, Mass. Gen. L. ch. 175 25, annual audited financial statements, 211 C.M.R. Part 19:01, et seq., and registration statements ________ containing current information about material transactions, such as loans, between it and its unregulated parent holding company. Mass. Gen. L. ch. 175 193N(b)(iii)(1). Under Massachusetts law, an insurance company is prohibited from including an unsecured loan to its parent holding company in its admitted assets and statutory surplus. Mass. Gen. L. ch. 175 11; see ___ note 2 supra. _____ -5- B. The Cash Management Account (CMA) _________________________________ Monarch Capital established the CMA for itself and its subsidiaries in 1985. It was formalized in 1986 by a Short-Term Investment Pool Agreement (STIP). Pursuant to the STIP, Monarch Capital, Monarch Life, and Springfield Life agreed to pool, on a daily basis, any available cash into the CMA.6 A STIP party requiring funds could draw upon the CMA to meet operating costs and obtain them from the CMA at short-term interest rates. The STIP agreement provided that pooled funds would be available to the depositing company in cash on a demand basis.7 The official purpose of the CMA was to minimize administrative expenses and external borrowing costs, and maximize investment returns. The unofficial purpose of the CMA, the Class contended, was to offer an unsecured, unregulated line of credit to a faltering parent and enable it to obtain illegal dividends.8 The Class accused  ____________________ 6 Springfield Life was a Vermont corporation. Vermont insurance regulators initially questioned Springfield Life s inclusion of the CMA investment in its statutory surplus, but acquiesced after the STIP was formalized. Another one of Monarch Capital s subsidiaries, First Variable Life Insurance Company (First Variable), an Arkansas corporation, was an original party to the STIP. When the Arkansas Department of Insurance raised objections to the CMA, First Variable ceased participation in the STIP. 7 Monarch Capital disclosed the existence of the CMA to state insurance regulators in June 1986, in an amended registration statement. It declared that it had $125 million in bank lines of credit with which to guarantee on demand the availability of funds to the STIP participants. 8 Under Massachusetts insurance laws, Monarch Life could pay dividends to Monarch Capital only out of its statutory surplus and only if its statutory surplus (after paying such dividends) was reasonable in relation to its outstanding liabilities and adequate for its financial needs. Mass. Gen. L. ch. 175  -6- the Monarch Defendants of abusing the CMA by using it to fund Monarch Capital s long-term, speculative real estate activities. After settling with the Monarch Defendants, the Class turned its attention to E&Y s role in this sequence of events. C. The 1989 Audited Consolidated Financial Statements and 1990 _____________________________________________________________ Unqualified Opinion of E&Y as to the CMA ________________________________________ By December 31, 1989, outstanding loans via the CMA from Monarch Life to Monarch Capital were $110.6 million; they were $15.1 million from Springfield Life to Monarch Capital. Together, the combined CMA balances of Monarch Life and Springfield Life were approximately $125 million. E&Y included this approximately $125 million figure as part of the $138.1 million (statutory basis) stockholder s equity of Monarch Capital s life insurance subsidiaries at December 31, 1989 (Footnote F to Monarch Capital s 1989 consolidated financial statements)9 and issued a report in 1990 concerning those  ____________________ 193N(j)-(1). 9 Footnote F states in pertinent part: Retained earnings include adjustments from a statutory basis to a generally accepted accounting principles basis for the Corporation s life insurance subsidiaries that are not available for distribution by the Corporation at December 31, 1989. Stockholder s equity of these subsidiaries available for distribution, loan or advances to the Corporation was $136.5 million at December 31, 1989; however, payments of dividends from this amount under certain conditions would require approval by regulatory authorities. Statutory basis stockholder s equity of -7- financial statements.10 1. The Contentions of the Class. _____________________________ The Class claims that E&Y committed securities fraud when it intentionally misrepresented to Monarch Capital investors that Monarch Capital s life insurance subsidiaries had $138 million in statutory surplus or restricted assets (not available for distribution to Monarch Capital under Massachusetts law), when over $125 million of the $138 million had already been distributed to Monarch Capital and spent by December 31, 1989. E&Y accomplished this fraud, avers the Class, by improperly including the CMA balances of Monarch Life and Springfield Life ($110.6 million and $15.1 million, respectively) in the computation of statutory surplus used to determine the (statutory basis) stockholder s equity of each insurance company. The Class  ____________________ the Corporation s life insurance subsidiaries was $138.1 million and $141.9 million at December 31, 1989 and 1988, respectively . . . . 10 The February 12, 1990, Report of Ernst & Young Independent Auditors states in pertinent part: We have audited the accompanying consolidated statements of financial condition of Monarch Capital Corporation [and subsidiaries] as of December 31, 1989 . . . .  We conducted our audits in accordance with generally accepted auditing standards . . . . In our opinion, the financial statements referred to above present fairly, in all material respects, the consolidated financial condition of Monarch Capital Corporation and subsidiaries at December 31, 1989 . . . in conformity with generally accepted accounting principles. -8- claims that the E&Y overstatements on the Monarch Defendants  1989 consolidated financial statements and 1990 report were material, lulling the investing public into a false sense of liquidity, and were made with the requisite Section 10(b) scienter necessary to establish securities fraud. 2. The Contentions of E&Y.  _______________________ Countering that this is not a negligence case, E&Y claims that, by including CMA assets in its computations of statutory surplus, it acted without requisite Section 10(b) scienter, as it relied on the opinion of state insurance examiners. E&Y contends that it is uncontroverted in the record that the Massachusetts insurance regulators, with jurisdiction over Monarch Life, concluded in a regulatory examination report, issued only a few months before its 1990 report, that the CMA was properly includable when calculating a life insurance subsidiary s statutory surplus and that E&Y explicitly read and relied upon this conclusion by noting in its work papers: [the] State of Massachusetts has approved the carrying of the [CMA] as an admitted asset. This balance should be considered admissible. 11 E&Y claims that neither the Class nor market professionals relied upon its purported overstatements in making their investment decisions or recommendations. Further, E&Y contends that three of its partners contemporaneously performed or reviewed their own independent and internal collectibility  ____________________ 11 E&Y claims that its auditors even raised this issue directly with the Massachusetts regulators who confirmed that the CMA should be included as a statutory asset of Monarch Life. -9- analyses and determined that Monarch Life s and Springfield Life s $125 million CMA investment was collectible from Monarch Capital. III. STANDARD OF REVIEW We review the grant by the district court of E&Y s motion for summary judgment de novo. Merino Calenti v. Boto, 24 F.3d ________ ______________ ____ 335, 338 (1st Cir. 1994). The district court viewed the record in the light most favorable to the Class and indulged all inferences in favor of the Class. Lucia v. Prospect Street High _____ ____________________ Income Portfolio, Inc., 36 F.3d 170, 174 (1st Cir. 1994). To _______________________ defeat summary judgment, the Class must present facts showing there is a genuine issue for trial. See Mulero-Rodr guez v. ___ ________________ Ponte, Inc., 98 F.3d 670, 673 (1st Cir. 1996). ___________ IV. DISCUSSION A. The District Court Opinion __________________________ After Central Bank of Denver, N.A. v. First Interstate Bank ____________________________ ______________________ of Denver, N.A., 511 U.S. 164 (1994), the district court found ________________ that a claim of securities fraud under Section 10(b) prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act and that its text does not itself reach [secondary actors] who aid and abet a [Section] 10(b) violation. Id. at 177; see note 3 supra. It then focused ___ ___ _____ -10- its analysis on the Class remaining primary liability claims, i.e., those based upon E&Y s 1990 audit opinion regarding Monarch ____ Capital s 1989 financial statements, as published in Monarch Capital s 1989 annual report and its 1989 Form 10K. As to these documents, the district court found that the record failed to show that E&Y made a material misstatement or omission affecting the purchase or sale of Monarch Capital stock. See SEC v. MacDonald, 699 F.2d 47, 49 (1st Cir. 1983)(substantial ___ ___ _________ likelihood that misstatements were actually significant in the deliberations of a reasonable shareholder). It also found that the record failed to show that any E&Y misrepresentations or omissions, purportedly relied upon by the Class, were made with Section 10(b) scienter. Ernst & Ernst v. Hochfelder, 425 U.S. ______________ __________ 185 (1976) (section 10(b) cannot be read to impose liability for negligent conduct alone). The district court granted E&Y s motion for summary judgment. Under a de novo review, we examine _______ each element separately. B. The Element of Materiality __________________________ In most circumstances, disputes over the materiality of allegedly false or misleading statements must be reserved for the trier of fact. Shaw v. Digital Equipment Corp., 82 F.3d 1194, ____ _______________________ 1217 (1st Cir. 1996); see Basic Inc. v. Levinson, 485 U.S. 224, ___ ___________ ________ 236 (1988); Lucia, 36 F.3d at 176. But not every unfulfilled _____ expression of corporate optimism, even if characterized as misstatement, can give rise to a genuine issue of materiality under the securities laws. Shaw, 82 F.3d at 1217; Lucia, 36 ____ _____ -11- F.3d at 176 (leaving open the possibility that some materiality determinations may be made as a matter of law). Summary judgment is warranted . . . if reasonable minds could not differ as to the materiality of the undisclosed information. Milton v. ______ Van Dorn Co., 961 F.2d 965, 970 (1st Cir. 1992). The mere fact ____________ that an investor might find information interesting or desirable is not sufficient to satisfy the materiality requirement. Rather, information is material only if its disclosure would alter the total mix of facts available to the investor and if _________ there is a substantial likelihood that a reasonable shareholder ______________________ would consider it important to the investment decision. Id. at ___ 969 (emphasis in original) (citing Basic, 485 U.S. at 231-32); _____ see also Lucia, 36 F.3d at 174.  ________ _____ Here, the district court found that all material information about the CMA was disclosed. It determined that a jury could not have concluded that E&Y made material misrepresentations or omissions in its 1990 opinion because the opinion did not alter the total mix of information available to the Class. Milton, ______ 961 F.2d at 972. Other public filings, the district court reasoned, were available to the Class and clearly revealed the existence and true nature of the CMA.12  ____________________ 12 These public filings included: Monarch Capital s 1989 annual report and Form 10K; the financial statements of Monarch Capital s subsidiaries, Monarch Life and Springfield Life; Monarch Capital s president s pessimistic message to stockholders; annual statements filed by Monarch Life with state insurance regulators listing the STIP; the triennial examination report on Monarch Life issued in November 1989, by state insurance examiners; and statutory basis financial statements filed by Monarch Life and Springfield Life with state insurance -12- After reviewing the record, we agree. The undisputed facts demonstrate that the disclosure of Monarch Life s statutory surplus in Footnote F of Monarch Capital s 1989 consolidated financial statements, filed in March 1990, was not material to investors, but merely duplicative of prior filings. It is also clear that it was not a primary source of reliance for insurance analysts evaluating insurance companies. We also note that the record does not reflect any concrete evidence put forward by the Class to indicate that E&Y s disclosures were genuinely material to investors, Anderson v. Liberty Lobby, Inc., 477 U.S. ________ ___________________ 242, 243 (1986), nor does it reflect a genuine issue of fact on this element of their claim. See Mulero-Rodr guez, 98 F.3d at ___ ________________ 673. C. The Element of Scienter _______________________ The scienter requirement is satisfied if the material misstatements or omissions were made knowingly, see MacDonald, ___ _________ 699 F.2d at 49, or if they were made recklessly. See First ___ _____ Commodity Corp. of Boston v. Commodity Futures Trading Comm n, __________________________ _________________________________ 676 F.2d 1, 7 (1st Cir. 1982).13 Like materiality, scienter [is  ____________________ regulators. 13 Acts of commission or omission are made recklessly if they are: . . . so highly unreasonable and such an extreme departure from the standards of ordinary care as to present a danger of misleading the plaintiff to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it. Hoffman v. Estabrook & _______ ____________ Co., Inc., 587 F.2d 509, 517 (1st Cir. 1978) __________ -13- a] fact-specific issue which should ordinarily be left to the trier of fact. In re Apple Computer Securities Litigation, 886 ___________________________________________ F.2d 1109, 1113 (9th Cir. 1989).14 However, summary judgment is not automatically precluded even in cases where motive or intent are at issue. Vel zquez v. Chard n, 736 F.2d 831, 833 (1st Cir. _________ _______ 1984); Smith v. Stratus Computer, Inc., 40 F.3d 11, 13 (1st Cir. _____ ______________________ 1994)(where intent is an issue the non-moving party cannot rest merely upon conclusory allegations, improbable inferences, and unsupported speculation, Medina-Mu oz v. R.J. Reynolds Tobacco ____________ ______________________ Co., 896 F.2d 5, 8 (1st Cir. 1990)). [S]ummary judgment on the ___ scienter issue is appropriate only where there is no rational ____ basis in the record for concluding that any of the challenged statements was made with requisite scienter. Provenz v. _______ Miller, 102 F.3d 1478, 1490 (9th Cir. 1996)(emphasis in ______ original), petition for cert. filed, 65 U.S.L.W. 3756 (U.S. May _________________________ 5, 1997)(No. 96-1770). However, this court and others have granted summary judgment to Section 10(b) defendants based on a lack of concrete evidence that would allow for an inference of fraudulent intent. See, e.g., Bryson v. Royal Business Group, ___ ____ ______ _____________________ 763 F.2d 491, 493-95 (1st Cir. 1985); Renovitch v. Kaufman, 905 _________ _______ F.2d 1040, 1047 (7th Cir. 1990); In re Worlds of Wonder __________________________  ____________________ (citation omitted). 14 Where the non-moving party has indicated that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim, Vel zquez v. Chard n, 736 F.2d 831, 833 (1st _________ _______ Cir. 1984) (citing Hahn v. Sargent, 523 F.2d 461, 468 (1st Cir. ____ _______ 1975)), trial courts should use restraint in granting summary judgment where discriminatory animus of the defendants is in issue. Id. ___ -14- Securities Litigation, 35 F.3d 1407, 1424 (9th Cir. 1994).15 _____________________ The district court found that Section 10(b) scienter was intended to proscribe knowing or intentional misconduct, not negligence. Hochfelder, 425 U.S. at 197. Since Hochfelder, __________ __________ recklessness can also satisfy the scienter requirement under Section 10(b). Hollinger v. Titan Capital Corp., 914 F.2d 1564 _________ ___________________ (9th Cir. 1990), cert. denied, 499 U.S. 976 (1991); ITT v. _____________ ___ Cornfeld, 619 F.2d 909, 923 (2d Cir. 1980); see First Commodity ________ ___ _______________ Corp., 676 F.2d at 7. Noting that the First Circuit has assumed _____ (without deciding) that recklessness amounting to carelessness approaching indifference satisfies the scienter requirement, Hoffman, 587 F.2d at 516, the district court concluded that a _______ lack of any showing of scienter is alone sufficient to support a motion for summary judgment. Bryson, 763 F.2d at 493 n.3. The ______ district court found that a reasonable and prudent investor would not be misled about the CMA due to the existence of other public filings and that E&Y s knowledge of these prior disclosures negated the possibility that it acted with scienter. Based upon our review of the voluminous record, we agree  ____________________ 15 Other circuits have held that scienter in Section 10(b) actions against accountants or independent auditors is not established merely through a showing of an error of judgment or a misapplication of accounting principles. The plaintiff must prove that the accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decision if confronted with the same facts. In re Software Toolworks, Inc., 50 F.3d 615, ________________________________ 627-28 (9th Cir. 1994); Worlds of Wonder, 35 F.3d at 1426; Fine _________________ ____ v. American Solar King Corp., 919 F.2d 290, 297 (5th Cir. 1990). _________________________ -15- with the district court that E&Y has not been shown to have acted with the requisite degree of Section 10(b) scienter. As an independent auditor, E&Y had no motive to commit securities fraud. In addition, we find no evidence that E&Y intentionally (or recklessly) prepared inadequate collectibility analyses in order deliberately (or recklessly) to mislead Monarch Capital investors. Nor do we find evidence that E&Y acted with fraudulent or reckless intent in relying on state insurance examiners. As to Footnote F of the 1990 audit opinion, there is no evidence that E&Y deliberately or recklessly chose not to find fault with the figures contained therein. Neither is there evidence of conspiratorial misconduct by E&Y to aid in fraud allegedly being perpetrated by the Monarch Defendants, nor does the Class supply any. Bryson, 763 F.2d at 493-95; Hochfelder, ______ __________ 425 U.S. at 197. What the Class offers to prove, and the record does support, however, is that E&Y made many mistakes. For example, it may have been a mistake for E&Y to take Monarch Capital s word on its own credit position. It may have been a mistake to rely on state insurance department examiners who, themselves, may have been misinformed. It may have been a mistake to view Monarch Capital s subsidiaries statutory surplus as a regulatory, not an accounting, issue. And, it may have been a mistake for E&Y to rely upon its own internal collectibility analyses (which were not models of professional accounting competence). Nevertheless, mistakes such as these do not support a finding of scienter. -16- Hochfelder, 425 U.S. at 214. Under the standards set forth above, __________ based upon the facts of this case, we find no knowing, deliberate, or reckless fraud on the part of E&Y. Negligence is not to be admired, but it is insufficient for Section 10(b) purposes. Id.  ___ V. CONCLUSION Based upon the above, we affirm the grant by the district court of E&Y s motion for summary judgment. AFFIRMED. -17-