[NOT FOR PUBLICATION]

United States Court of Appeals
For the First Circuit


No. 97-1221

CHANNING M. WELLS III, ROBERT R. JUENGST,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED,
Plaintiffs - Appellants,

v.

MONARCH CAPITAL CORPORATION, ET AL.,
Defendants - Appellees.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. A. David Mazzone, Senior U.S. District Judge] 



Before

Selya, Circuit Judge, 
Hill,* Senior Circuit Judge, 
and Boudin, Circuit Judge. 



Edward F. Haber, with whom Thomas G. Shapiro, Michelle H. 
Blauner, Shapiro Haber & Urmy LLP, Herbert E. Milstein, Lisa M. 
Mezzetti, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., and 
Calhoun, Benzin, Kademenos & Heichel were on brief for 
appellants.
Thomas L. Riesenberg, with whom Ernst & Young LLP, Irvin B. 
Nathan, Andrew T. Karron, Arnold & Porter, Kathryn A. Oberly and 
William P. Hammer were on brief for appellees. 



OCTOBER 29, 1997


 

* Of the Eleventh Circuit, sitting by designation.

Per Curiam. In this case the district court found that Per Curiam. 

no reasonable trier of fact could conclude that Defendant-

Appellee Ernst & Young LLP (E&Y) had engaged in securities fraud

and granted its motion for summary judgment. For the following

reasons, we affirm.

I. PROCEDURAL BACKGROUND

This appeal from summary judgment is all that remains from a

shareholder class action filed in 1991 by Plaintiffs-Appellants

Channing M. Wells, III et al. (the Class)1 under Section 10(b) of 

the Securities Exchange Act of 1934, 15 U.S.C. 78j(b), and Rule

10b-5 promulgated thereunder, 17 C.F.R. 240.10b-5, against

Monarch Capital Corporation (Monarch Capital), its wholly owned

and largest subsidiary, Monarch Life Insurance Co. (Monarch

Life), and Monarch Life s wholly owned subsidiary, Springfield

Life Insurance Co., Inc. (Springfield Life) (collectively, the

Monarch Defendants), and E&Y. Fourteen months after filing the

complaint, the Class settled with the Monarch Defendants for $4.7

million. Following the settlement, the only remaining defendant

was E&Y. The gravamen of the Class complaint against E&Y alleged

that E&Y violated federal securities laws and state law by making

material misrepresentations in (and omissions from) the Monarch

Defendants 1989 consolidated financial statements (and E&Y s
 

1 Wells represented a class of shareholders who purchased
Monarch Capital stock between November 10, 1989, and November 14,
1990, at prices ranging from $16 1/8 to $4 3/8 per share.

-2-

accompanying 1990 audit opinion) with scienter. It did so, the

Class alleged, by materially overstating the statutory surplus2

of Monarch Capital s subsidiaries, more particularly, the value

of the Cash Management Account (CMA). See Part II.B. infra. The 

end result of these actions, the Class complained, was to mislead

investors by artificially inflating the price of Monarch

Capital s stock.

After the 1992 settlement, the case remained stagnant for

three years.3 Then, in March 1995, the district court sua sponte 

scheduled a status conference. Three months later, E&Y filed a

motion for summary judgment. In response, the Class filed its

opposition to E&Y s motion and a motion for leave to file a

Second Amended Class Action Complaint. In January 1996, the

Class filed its own motion for partial summary judgment.

Stating, in its forty-five page opinion, that Plaintiffs [the

Class] virtually abandoned the case, the district court granted

summary judgment for E&Y on the Class claims for primary

liability under Section 10(b) and denied the Class motions.

 

2 An insurance company s statutory surplus is comprised of its
admitted assets (or statutory assets minus statutory
liabilities).

3 During this period of inactivity, the Supreme Court issued its
decision in Central Bank of Denver, N.A. v. First Interstate Bank 
of Denver, N.A., 511 U.S. 164 (1994), holding that a private 
plaintiff may not maintain an aiding and abetting suit under
Section 10(b) as the text of the 1934 Act does not itself reach
those who aid and abet a 10(b) violation. Id. at 177. The 
district court found, after Central Bank, that all pending 
secondary liability claims against E&Y were barred and granted
summary judgment in favor of E&Y on all claims for aiding and
abetting.

-3-

This appeal follows.

II. FACTUAL BACKGROUND

A. Monarch Capital - the Parent Holding Company 

Monarch Capital was a typical financial holding company of

the 1970s and 1980s. Its operations included insurance and

insurance services, corporate, real estate investment and venture

capital, and investment management. For nearly two decades,

Monarch Capital centered its focus on its real estate business.

By 1989, it was clear that this focus was in error. Monarch

Capital was in severe financial distress, with reported losses

totaling millions of dollars. Even its president, in his 1989

annual report to shareholders, conceded that [o]ur financial

results for the past two years have been very disappointing. 

Monarch Capital announced plans to terminate its capital markets

and real estate operations and concentrate on its profitable

insurance sector. Despite vows to pull out of its downward

spiral, Monarch Capital continued to deteriorate financially.

The present action struck the death knell blow; parent Monarch

Capital was forced into bankruptcy4 and subsidiary Monarch Life

was placed in receivership by the Massachusetts insurance

 

4 The bankruptcy action stayed the Class claims against Monarch
Capital. When the settlement agreement was finalized, the
bankruptcy court approved Monarch Capital s reorganization plan,
discharging and releasing the Class claims against it.

-4-

commissioner.5

 

5 Monarch Life was regulated by the Commissioner of Insurance
for the Commonwealth of Massachusetts. As a state regulated
insurance company, it was required to file annual statements,
Mass. Gen. L. ch. 175 25, annual audited financial statements,
211 C.M.R. Part 19:01, et seq., and registration statements 
containing current information about material transactions, such
as loans, between it and its unregulated parent holding company.
Mass. Gen. L. ch. 175 193N(b)(iii)(1). Under Massachusetts
law, an insurance company is prohibited from including an
unsecured loan to its parent holding company in its admitted
assets and statutory surplus. Mass. Gen. L. ch. 175 11; see 
note 2 supra. 

-5-

B. The Cash Management Account (CMA) 

Monarch Capital established the CMA for itself and its

subsidiaries in 1985. It was formalized in 1986 by a Short-Term

Investment Pool Agreement (STIP). Pursuant to the STIP, Monarch

Capital, Monarch Life, and Springfield Life agreed to pool, on a

daily basis, any available cash into the CMA.6 A STIP party

requiring funds could draw upon the CMA to meet operating costs

and obtain them from the CMA at short-term interest rates. The

STIP agreement provided that pooled funds would be available to

the depositing company in cash on a demand basis.7 The official

purpose of the CMA was to minimize administrative expenses and

external borrowing costs, and maximize investment returns. The

unofficial purpose of the CMA, the Class contended, was to offer

an unsecured, unregulated line of credit to a faltering parent

and enable it to obtain illegal dividends.8 The Class accused
 

6 Springfield Life was a Vermont corporation. Vermont insurance
regulators initially questioned Springfield Life s inclusion of
the CMA investment in its statutory surplus, but acquiesced after
the STIP was formalized. Another one of Monarch Capital s
subsidiaries, First Variable Life Insurance Company (First
Variable), an Arkansas corporation, was an original party to the
STIP. When the Arkansas Department of Insurance raised
objections to the CMA, First Variable ceased participation in the
STIP.

7 Monarch Capital disclosed the existence of the CMA to state
insurance regulators in June 1986, in an amended registration
statement. It declared that it had $125 million in bank lines of
credit with which to guarantee on demand the availability of
funds to the STIP participants.

8 Under Massachusetts insurance laws, Monarch Life could pay
dividends to Monarch Capital only out of its statutory surplus
and only if its statutory surplus (after paying such dividends)
was reasonable in relation to its outstanding liabilities and
adequate for its financial needs. Mass. Gen. L. ch. 175 

-6-

the Monarch Defendants of abusing the CMA by using it to fund

Monarch Capital s long-term, speculative real estate activities.

After settling with the Monarch Defendants, the Class turned its

attention to E&Y s role in this sequence of events.

C. The 1989 Audited Consolidated Financial Statements and 1990 

Unqualified Opinion of E&Y as to the CMA 

By December 31, 1989, outstanding loans via the CMA from

Monarch Life to Monarch Capital were $110.6 million; they were

$15.1 million from Springfield Life to Monarch Capital.

Together, the combined CMA balances of Monarch Life and

Springfield Life were approximately $125 million. E&Y included

this approximately $125 million figure as part of the $138.1

million (statutory basis) stockholder s equity of Monarch

Capital s life insurance subsidiaries at December 31, 1989

(Footnote F to Monarch Capital s 1989 consolidated financial

statements)9 and issued a report in 1990 concerning those
 

193N(j)-(1).

9 Footnote F states in pertinent part:

Retained earnings include adjustments from a
statutory basis to a generally accepted
accounting principles basis for the
Corporation s life insurance subsidiaries
that are not available for distribution by
the Corporation at December 31, 1989.
Stockholder s equity of these subsidiaries
available for distribution, loan or advances
to the Corporation was $136.5 million at
December 31, 1989; however, payments of
dividends from this amount under certain
conditions would require approval by
regulatory authorities.

Statutory basis stockholder s equity of

-7-

financial statements.10

1. The Contentions of the Class. 

The Class claims that E&Y committed securities fraud when it

intentionally misrepresented to Monarch Capital investors that

Monarch Capital s life insurance subsidiaries had $138 million in

statutory surplus or restricted assets (not available for

distribution to Monarch Capital under Massachusetts law), when

over $125 million of the $138 million had already been

distributed to Monarch Capital and spent by December 31, 1989.

E&Y accomplished this fraud, avers the Class, by improperly

including the CMA balances of Monarch Life and Springfield Life

($110.6 million and $15.1 million, respectively) in the

computation of statutory surplus used to determine the (statutory

basis) stockholder s equity of each insurance company. The Class
 

the Corporation s life insurance subsidiaries
was $138.1 million and $141.9 million at
December 31, 1989 and 1988, respectively
. . . .

10 The February 12, 1990, Report of Ernst & Young Independent
Auditors states in pertinent part:

We have audited the accompanying consolidated
statements of financial condition of Monarch
Capital Corporation [and subsidiaries] as of
December 31, 1989 . . . . 

We conducted our audits in accordance with
generally accepted auditing standards . . . .

In our opinion, the financial statements
referred to above present fairly, in all
material respects, the consolidated financial
condition of Monarch Capital Corporation and
subsidiaries at December 31, 1989 . . . in
conformity with generally accepted accounting
principles.

-8-

claims that the E&Y overstatements on the Monarch Defendants 

1989 consolidated financial statements and 1990 report were

material, lulling the investing public into a false sense of

liquidity, and were made with the requisite Section 10(b)

scienter necessary to establish securities fraud.

2. The Contentions of E&Y.  

Countering that this is not a negligence case, E&Y claims

that, by including CMA assets in its computations of statutory

surplus, it acted without requisite Section 10(b) scienter, as it

relied on the opinion of state insurance examiners. E&Y contends

that it is uncontroverted in the record that the Massachusetts

insurance regulators, with jurisdiction over Monarch Life,

concluded in a regulatory examination report, issued only a few

months before its 1990 report, that the CMA was properly

includable when calculating a life insurance subsidiary s

statutory surplus and that E&Y explicitly read and relied upon

this conclusion by noting in its work papers: [the] State of

Massachusetts has approved the carrying of the [CMA] as an

admitted asset. This balance should be considered admissible. 11

E&Y claims that neither the Class nor market professionals

relied upon its purported overstatements in making their

investment decisions or recommendations. Further, E&Y contends

that three of its partners contemporaneously performed or

reviewed their own independent and internal collectibility
 

11 E&Y claims that its auditors even raised this issue directly
with the Massachusetts regulators who confirmed that the CMA
should be included as a statutory asset of Monarch Life.

-9-

analyses and determined that Monarch Life s and Springfield

Life s $125 million CMA investment was collectible from Monarch

Capital.

III. STANDARD OF REVIEW

We review the grant by the district court of E&Y s motion

for summary judgment de novo. Merino Calenti v. Boto, 24 F.3d 

335, 338 (1st Cir. 1994). The district court viewed the record

in the light most favorable to the Class and indulged all

inferences in favor of the Class. Lucia v. Prospect Street High 

Income Portfolio, Inc., 36 F.3d 170, 174 (1st Cir. 1994). To 

defeat summary judgment, the Class must present facts showing

there is a genuine issue for trial. See Mulero-Rodr guez v. 

Ponte, Inc., 98 F.3d 670, 673 (1st Cir. 1996). 

IV. DISCUSSION

A. The District Court Opinion 

After Central Bank of Denver, N.A. v. First Interstate Bank 

of Denver, N.A., 511 U.S. 164 (1994), the district court found 

that a claim of securities fraud under Section 10(b) prohibits

only the making of a material misstatement (or omission) or the

commission of a manipulative act and that its text does not

itself reach [secondary actors] who aid and abet a [Section]

10(b) violation. Id. at 177; see note 3 supra. It then focused 

-10-

its analysis on the Class remaining primary liability claims,

i.e., those based upon E&Y s 1990 audit opinion regarding Monarch 

Capital s 1989 financial statements, as published in Monarch

Capital s 1989 annual report and its 1989 Form 10K.

As to these documents, the district court found that the

record failed to show that E&Y made a material misstatement or

omission affecting the purchase or sale of Monarch Capital stock.

See SEC v. MacDonald, 699 F.2d 47, 49 (1st Cir. 1983)(substantial 

likelihood that misstatements were actually significant in the

deliberations of a reasonable shareholder). It also found that

the record failed to show that any E&Y misrepresentations or

omissions, purportedly relied upon by the Class, were made with

Section 10(b) scienter. Ernst & Ernst v. Hochfelder, 425 U.S. 

185 (1976) (section 10(b) cannot be read to impose liability for

negligent conduct alone). The district court granted E&Y s

motion for summary judgment. Under a de novo review, we examine 

each element separately.

B. The Element of Materiality 

In most circumstances, disputes over the materiality of

allegedly false or misleading statements must be reserved for the

trier of fact. Shaw v. Digital Equipment Corp., 82 F.3d 1194, 

1217 (1st Cir. 1996); see Basic Inc. v. Levinson, 485 U.S. 224, 

236 (1988); Lucia, 36 F.3d at 176. But not every unfulfilled 

expression of corporate optimism, even if characterized as

misstatement, can give rise to a genuine issue of materiality

under the securities laws. Shaw, 82 F.3d at 1217; Lucia, 36 

-11-

F.3d at 176 (leaving open the possibility that some materiality

determinations may be made as a matter of law). Summary

judgment is warranted . . . if reasonable minds could not differ

as to the materiality of the undisclosed information. Milton v. 

Van Dorn Co., 961 F.2d 965, 970 (1st Cir. 1992). The mere fact 

that an investor might find information interesting or desirable

is not sufficient to satisfy the materiality requirement.

Rather, information is material only if its disclosure would

alter the total mix of facts available to the investor and if 

there is a substantial likelihood that a reasonable shareholder 

would consider it important to the investment decision. Id. at 

969 (emphasis in original) (citing Basic, 485 U.S. at 231-32); 

see also Lucia, 36 F.3d at 174.  

Here, the district court found that all material information

about the CMA was disclosed. It determined that a jury could not

have concluded that E&Y made material misrepresentations or

omissions in its 1990 opinion because the opinion did not alter

the total mix of information available to the Class. Milton, 

961 F.2d at 972. Other public filings, the district court

reasoned, were available to the Class and clearly revealed the

existence and true nature of the CMA.12
 

12 These public filings included: Monarch Capital s 1989 annual
report and Form 10K; the financial statements of Monarch
Capital s subsidiaries, Monarch Life and Springfield Life;
Monarch Capital s president s pessimistic message to
stockholders; annual statements filed by Monarch Life with state
insurance regulators listing the STIP; the triennial examination
report on Monarch Life issued in November 1989, by state
insurance examiners; and statutory basis financial statements
filed by Monarch Life and Springfield Life with state insurance

-12-

After reviewing the record, we agree. The undisputed facts

demonstrate that the disclosure of Monarch Life s statutory

surplus in Footnote F of Monarch Capital s 1989 consolidated

financial statements, filed in March 1990, was not material to

investors, but merely duplicative of prior filings. It is also

clear that it was not a primary source of reliance for insurance

analysts evaluating insurance companies. We also note that the

record does not reflect any concrete evidence put forward by

the Class to indicate that E&Y s disclosures were genuinely

material to investors, Anderson v. Liberty Lobby, Inc., 477 U.S. 

242, 243 (1986), nor does it reflect a genuine issue of fact on

this element of their claim. See Mulero-Rodr guez, 98 F.3d at 

673.

C. The Element of Scienter 

The scienter requirement is satisfied if the material

misstatements or omissions were made knowingly, see MacDonald, 

699 F.2d at 49, or if they were made recklessly. See First 

Commodity Corp. of Boston v. Commodity Futures Trading Comm n, 

676 F.2d 1, 7 (1st Cir. 1982).13 Like materiality, scienter [is
 

regulators.

13 Acts of commission or omission are made recklessly if they
are:

. . . so highly unreasonable and such an
extreme departure from the standards of
ordinary care as to present a danger of
misleading the plaintiff to the extent that
the danger was either known to the defendant
or so obvious that the defendant must have
been aware of it. Hoffman v. Estabrook & 
Co., Inc., 587 F.2d 509, 517 (1st Cir. 1978) 

-13-

a] fact-specific issue which should ordinarily be left to the

trier of fact. In re Apple Computer Securities Litigation, 886 

F.2d 1109, 1113 (9th Cir. 1989).14 However, summary judgment is

not automatically precluded even in cases where motive or intent

are at issue. Vel zquez v. Chard n, 736 F.2d 831, 833 (1st Cir. 

1984); Smith v. Stratus Computer, Inc., 40 F.3d 11, 13 (1st Cir. 

1994)(where intent is an issue the non-moving party cannot rest

merely upon conclusory allegations, improbable inferences, and

unsupported speculation, Medina-Mu oz v. R.J. Reynolds Tobacco 

Co., 896 F.2d 5, 8 (1st Cir. 1990)). [S]ummary judgment on the 

scienter issue is appropriate only where there is no rational 

basis in the record for concluding that any of the challenged

statements was made with requisite scienter. Provenz v. 

Miller, 102 F.3d 1478, 1490 (9th Cir. 1996)(emphasis in 

original), petition for cert. filed, 65 U.S.L.W. 3756 (U.S. May 

5, 1997)(No. 96-1770). However, this court and others have

granted summary judgment to Section 10(b) defendants based on a

lack of concrete evidence that would allow for an inference of

fraudulent intent. See, e.g., Bryson v. Royal Business Group, 

763 F.2d 491, 493-95 (1st Cir. 1985); Renovitch v. Kaufman, 905 

F.2d 1040, 1047 (7th Cir. 1990); In re Worlds of Wonder 
 

(citation omitted).

14 Where the non-moving party has indicated that he can produce
the requisite quantum of evidence to enable him to reach the jury
with his claim, Vel zquez v. Chard n, 736 F.2d 831, 833 (1st 
Cir. 1984) (citing Hahn v. Sargent, 523 F.2d 461, 468 (1st Cir. 
1975)), trial courts should use restraint in granting summary
judgment where discriminatory animus of the defendants is in
issue. Id. 

-14-

Securities Litigation, 35 F.3d 1407, 1424 (9th Cir. 1994).15 

The district court found that Section 10(b) scienter was

intended to proscribe knowing or intentional misconduct, not

negligence. Hochfelder, 425 U.S. at 197. Since Hochfelder, 

recklessness can also satisfy the scienter requirement under

Section 10(b). Hollinger v. Titan Capital Corp., 914 F.2d 1564 

(9th Cir. 1990), cert. denied, 499 U.S. 976 (1991); ITT v. 

Cornfeld, 619 F.2d 909, 923 (2d Cir. 1980); see First Commodity 

Corp., 676 F.2d at 7. Noting that the First Circuit has assumed 

(without deciding) that recklessness amounting to carelessness

approaching indifference satisfies the scienter requirement,

Hoffman, 587 F.2d at 516, the district court concluded that a 

lack of any showing of scienter is alone sufficient to support a

motion for summary judgment. Bryson, 763 F.2d at 493 n.3. The 

district court found that a reasonable and prudent investor would

not be misled about the CMA due to the existence of other public

filings and that E&Y s knowledge of these prior disclosures

negated the possibility that it acted with scienter.

Based upon our review of the voluminous record, we agree

 

15 Other circuits have held that scienter in Section 10(b)
actions against accountants or independent auditors is not
established merely through a showing of an error of judgment or a
misapplication of accounting principles. The plaintiff must
prove that the accounting practices were so deficient that the
audit amounted to no audit at all, or an egregious refusal to see
the obvious, or to investigate the doubtful, or that the
accounting judgments which were made were such that no reasonable
accountant would have made the same decision if confronted with
the same facts. In re Software Toolworks, Inc., 50 F.3d 615, 
627-28 (9th Cir. 1994); Worlds of Wonder, 35 F.3d at 1426; Fine 
v. American Solar King Corp., 919 F.2d 290, 297 (5th Cir. 1990). 

-15-

with the district court that E&Y has not been shown to have acted

with the requisite degree of Section 10(b) scienter. As an

independent auditor, E&Y had no motive to commit securities

fraud. In addition, we find no evidence that E&Y intentionally

(or recklessly) prepared inadequate collectibility analyses in

order deliberately (or recklessly) to mislead Monarch Capital

investors. Nor do we find evidence that E&Y acted with

fraudulent or reckless intent in relying on state insurance

examiners. As to Footnote F of the 1990 audit opinion, there is

no evidence that E&Y deliberately or recklessly chose not to find

fault with the figures contained therein. Neither is there

evidence of conspiratorial misconduct by E&Y to aid in fraud

allegedly being perpetrated by the Monarch Defendants, nor does

the Class supply any. Bryson, 763 F.2d at 493-95; Hochfelder, 

425 U.S. at 197.

What the Class offers to prove, and the record does support,

however, is that E&Y made many mistakes. For example, it may

have been a mistake for E&Y to take Monarch Capital s word on its

own credit position. It may have been a mistake to rely on state

insurance department examiners who, themselves, may have been

misinformed. It may have been a mistake to view Monarch

Capital s subsidiaries statutory surplus as a regulatory, not an

accounting, issue. And, it may have been a mistake for E&Y to

rely upon its own internal collectibility analyses (which were

not models of professional accounting competence). Nevertheless,

mistakes such as these do not support a finding of scienter.

-16-

Hochfelder, 425 U.S. at 214. Under the standards set forth above, 

based upon the facts of this case, we find no knowing,

deliberate, or reckless fraud on the part of E&Y. Negligence is

not to be admired, but it is insufficient for Section 10(b)

purposes. Id.  

V. CONCLUSION

Based upon the above, we affirm the grant by the district

court of E&Y s motion for summary judgment.

AFFIRMED.

-17-